# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL CALVERT,

    Defendant,

Case No. 19-40068-03-HLT

## MEMORANDUM AND ORDER

This matter comes before the court on Defendant Michael Calvert's Motion for Temporary Release from Custody and in the Alternative for Temporary Release (ECF No. 142). After Mr. Calvert was arrested, the court ordered him detained pending trial pursuant to 18 U.S.C. § 3142. Since then, the court twice denied his requests to review and/or reopen detention. Mr. Calvert now once again seeks release. This time, he asks the court to reopen his detention hearing pursuant to § 3142(f) or, alternatively, to order that he be temporarily released from custody pursuant to § 3142(i) for what he contends are compelling reasons related to the recent COVID-19 global pandemic. Mr. Calvert also argues the government must take reasonable measures under the Eighth Amendment to protect his health and safety. The government opposes the motion. For the reasons explained below, the motion is denied.

**I.    BACKGROUND**

Mr. Calvert is charged with conspiring to manufacture, distribute, and possess with the intent to distribute heroin and fentanyl (and variations thereof) resulting in death and serious bodily injury (Count 1) and conspiring to manufacture, distribute and possess with the intent to distribute Ecstasy and marijuana (Count 2). On August 30, 2019, he appeared before Chief Magistrate Judge

O'Hara for a detention hearing. Magistrate Judge O'Hara detained Mr. Calvert, finding by a preponderance of the evidence that no condition or combination of conditions would reasonably assure his appearance. (ECF No. 39, at 1.) The court determined that Mr. Calvert posed "a serious risk of flight (not physical flight from the jurisdiction but rather in terms of being reasonably amenable to supervision)." (*Id.*) Magistrate Judge O'Hara further found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community. The court noted that Mr. Calvert "poses a serious risk of drug trafficking." (*Id.*) The court reached this conclusion based on Mr. Calvert's significant prior criminal record and his record of failing to comply with conditions of release including the fact that, at the time of Mr. Calvert's recent arrest, he was on probation with evidence that he trafficked in drugs the day after being placed on probation. (*Id.* at 1-2.) The court also found that Mr. Calvert posed a threat of continued drug trafficking and thus posed a serious risk of danger to the community. (*Id.* at 2.)

Mr. Calvert sought review of the detention order by District Judge Teeter, who denied the motion and affirmed Magistrate Judge O'Hara's ruling. (ECF Nos. 61, 77.)

Mr. Calvert also filed a motion for temporary release from custody so that he could attend the trial of an individual accused of murdering Mr. Calvert's infant son, which the undersigned denied. (ECF Nos. 50, 64.) In doing so, the court relied largely on the same facts that Magistrate Judge O'Hara (and, later, District Judge Teeter) relied upon to conclude that Mr. Calvert was a flight risk and posed a danger to the community. The court remarked that it was sympathetic to Mr. Calvert's reasons for requesting release at that time, but those reasons did not alter the conclusion that he must be detained under the Bail Reform Act.

Since Magistrate Judge O'Hara's initial detention order, Mr. Calvert has remained on pretrial detention at the Leavenworth Detention Center ("LDC"). Mr. Calvert now seeks to reopen his detention hearing based on concerns related to COVID-19 and because he contends the government's case against him is weaker than previously thought. Alternatively, he moves for release for compelling reasons related to COVID-19 and his underlying sickle cell disease.

## II. REOPENING A DETENTION HEARING UNDER 18 U.S.C. § 3142(f)

The court may reopen a detention hearing "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Mr. Calvert seems to advance essentially two arguments to support his motion to reopen his detention under § 3142(f). First, he contends that COVID-19 rebuts the statutory presumption of dangerousness because the pandemic combined with Mr. Calvert's weakened immune system exposes him and other inmates to a higher likelihood of infection and increases the risk of an outbreak of COVID-19 at LDC. Second, he contends that the government's case against him is weaker than previously thought. The court will address each of these arguments separately.

### A. Reopening Detention Based on COVID-19 Concerns

A defendant's concerns that he or she is facing heightened COVID-19 risks while incarcerated do not typically factor into a § 3142(f) analysis because the risk of harm *to the defendant* does not usually bear on whether the court can fashion conditions of release that will reasonably assure that the defendant is not a risk of nonappearance or a risk of harm to any others or the community. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see, e.g.*, *United States v. Bracey*, No. 15-cr-235(2), 2020 WL 1809187,

3

at *3 (D. Minn. Apr. 9, 2020) (denying motion to reopen detention under § 3142(f) based on defendant's COVID-19 concerns); *United States v. Hanson*, No. CR 19-132, 2020 WL 1692967, at *2 (D. Mont. Apr. 7, 2020) (same); *United States v. Graham*, No. 19-cr-185(2), 2020 WL 1685912, at *5 (D. Minn. Apr. 7, 2020) (same); *United States v. Knight*, No. 3:19-CR-0038, 2020 WL 1676959, at *5 (D. Nev. Apr. 6, 2020) (same).

The COVID-19 pandemic and its attendant health concerns are "new information" since Mr. Calvert's detention hearing. But § 3142(f) requires more than simply new information. It also requires that the new information must have a "material bearing" on whether conditions of release "will reasonably assure the appearance of such person as required and the safety of any other person and the community." § 3142(f). Mr. Calvert does not articulate any way in which the COVID-19 pandemic changes the court's prior findings about his risk of non-appearance and/or the safety of others. Even if the court credits his argument that the pandemic exposes the prison population as a whole to an increased risk of an outbreak of COVID-19 at LDC, the governing legal standard "is *not* . . . the harms that his incarceration would cause (however substantial)" because the court must evaluate "the danger" that "would be posed *by the person's release.*" *United States v. Lee*, No. 19-CR-298, 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020) (quoting 18 U.S.C. § 3142(g)(4)). And even if the court credits Mr. Calvert's argument that his weakened immune system exposes him to a higher likelihood of infection, this argument is also unpersuasive. The court considers the defendant's physical and mental condition as one of the Bail Reform Act factors. § 3142(g)(3)(A). But, again, the court considers that factor only insofar as it bears on a potential danger to the community, not a risk of harm to the defendant himself. *See Clark*, 2020 WL 1446895, at *3; *see also Graham*, 2020 WL 1685912, at *5 (finding a defendant's concerns

about contracting COVID-19 had no bearing, "much less a 'material bearing'" on the issue of the defendant's risk of flight or whether he posed a danger to the community).

B.  **Weight of the Evidence**

Mr. Calvert also argues the government's evidence against him is weaker than first believed and that this also warrants reopening his detention hearing. The weight of the evidence is a factor that bears on detention. § 3142(g)(2). And the court previously found that the record indicated that the government had a strong case against Mr. Calvert. (ECF No. 39, at 2.) Among other things, the indictment charges that a death resulted from one of the conspiracy counts against Mr. Calvert. Mr. Calvert argues the government lacks evidence to show that the amount of fentanyl he is alleged to have sold was lethal, or that Mr. Calvert manufactured any of the substances distributed, or that he supplied a co-defendant with the substance alleged to have resulted in the death of an individual.

In response, the government incorporates its prior extensive briefing on detention and explains that Mr. Calvert's argument reflects a disputed issue regarding the *Pinkerton* liability principles. (ECF No. 160, at 5.) The Tenth Circuit has described *Pinkerton* liability as:

> During the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators. Of course, a conspirator is only responsible for the crimes of the conspirators that are committed in furtherance of the conspiracy. As stated by the Supreme Court, conspirators are responsible for crimes committed "within the scope of the unlawful project" and thus "reasonably foreseen as a necessary or natural consequence of the unlawful agreement."

*United States v. Cherry*, 217 F.3d 811, 817 (10th Cir. 2000) (quoting *Pinkerton v. United States*, 328 U.S. 640, 648 (1946)). As the government notes, the conspiracy alleges that the particular conduct that occurred was, at a minimum, reasonably foreseeable to Mr. Calvert, if not committed directly by him. (ECF No. 160.) The court agrees. Mr. Calvert's arguments concerning his own

5

alleged limited conduct does not bear on whether he is responsible for the reasonably foreseeable actions of co-conspirators—the essence of a conspiracy charge. To that end, this is not information that has a material bearing on the issue of detention because it does not cause the court to depart from Magistrate Judge O'Hara's finding that the government has a strong case against Mr. Calvert.

In sum, the court denies Mr. Calvert's motion to reopen his detention hearing because he has not shown that COVID-19 or new information about the strength of the governments case has a material bearing on the issue of detention.

### III.   TEMPORARY RELEASE FOR COMPELLING REASONS UNDER 18 U.S.C. § 3142(i)

Mr. Calvert also moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That statute provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason*.

18 U.S.C. § 3142(i) (emphasis added). A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

These are unprecedented times, and the COVID-19 pandemic poses serious health risks, including to those who are incarcerated. "Those living in close quarters, including inmates, face increased risks of contamination, but that alone cannot be the basis to release inmates *en masse*," particularly when many of these are likely to continue to engage in criminal activity. *See United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *1 (D. Kan. Apr. 9, 2020). Rather, the court must make an individualized determination on a case-by-case basis as to whether the

defendant has set forth facts demonstrating that temporary release is necessary for compelling reasons. In making this determination, the court will consider at least the following factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Clark*, 2020 WL 1446895, at * 3. The court does not necessarily weigh these factors equally but considers them as a whole to guide its determination. *Id.*

### A.  Original Grounds for Pretrial Detention

The court first considers the original grounds for the defendant's pretrial detention because, after all, the court already found that pretrial detention was warranted on the grounds that no condition or combination of conditions would reasonably assure the defendant would appear as required and/or not pose a risk of harm to others. *Id.* "These reasons should be taken into consideration in determining whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." *Id.*

In this case, three different judges (including the undersigned) have concluded that Mr. Calvert is a high-risk defendant and that the court cannot fashion conditions of release that would reasonably assure his appearance and the safety of any other person or the community, as summarized in the background section. Magistrate Judge O'Hara first found that Mr. Calvert was not amenable to supervision and specifically noted that when he was recently arrested, he was on probation with evidence that he trafficked in drugs a day after being placed on probation. Magistrate Judge O'Hara also found that Mr. Calvert poses a serious continued risk of drug trafficking and had a lengthy criminal history. Mr. Calvert now says he now understands the

7

importance of following the rules, but his lengthy criminal history (which includes charges of failing to appear), his prior failure to comply with conditions of release, and the serious charges he is facing make it unlikely that he could successfully comply with any conditions the court would now impose. Therefore, this factor weighs heavily against temporary release.

### B. The Specificity of the Defendant's Stated COVID-19 Concerns

Mr. Calvert argues that he is at an increased risk of contracting COVID-19 because he is housed in close quarters and LDC has not implemented all appropriate measures to stop or mitigate against the spread of COVID-19. In recent cases, the undersigned has addressed substantially similar arguments made by other defendants residing at LDC and concluded that: (1) those living in close quarters, including inmates, face increase risks of contamination, and (2) CoreCivic is taking reasonable precautionary measures that are not inconsistent with the challenges that society as a whole is facing. *See United States v. Duncan*, No. 18-40030-01-HLT, 2020 WL 1700355, at *7 (D. Kan. Apr. 8, 2020) (finding that concerns about lack of access to soap, hand sanitizer, and personal protective equipment were valid but noting nationwide shortages of many of these items, too). The court also recognizes that there still are no known COVID-19 cases at LDC or any evidence that LDC cannot provide adequate healthcare to any inmates that may contract COVID-19. *Id.* The undersigned has taken these arguments into account but will not rehash them here in the interest of time. Instead, the court will focus on the argument that is more specific to Mr. Calvert himself—namely, that his sickle cell disease puts him at risk of suffering severe illness if he were to contract COVID-19.

Mr. Calvert argues the Centers for Disease Control and Prevention ("CDC") states that people who have sickle cell disease are at both a higher risk of infection and a higher risk of negative, long-lasting health consequences. (ECF No. 157, at 2.) But, on this point, he does not

cite any CDC guidance. Instead, he points to the declaration of Johnathan Louis Golob, M.D., which states, "As the Center [sic] for Disease Control and Prevention has advised, certain medical conditions increase the risk of serious COVID-19 for people of any age [including] . . . blood disorders (including sickle cell disease)." (ECF No. 157, at 17.) The court recently considered Dr. Golob's declaration in another case and noted that: (1) it is unclear whether Dr. Golob bases this statement on his own knowledge or CDC guidance, and (2) the declaration is publicly available on a website for public defenders and is not specific to the defendant or the facility where he is housed. *Duncan*, 2020 WL 1700355, at *8. Notably, sickle cell disease is not a condition listed on the CDC's webpage for "Groups at Higher Risk of Severe Illness."[1] But Mr. Calvert argues that the CDC recognizes that immunocompromised people are at an increased risk, and sickle cell disease can affect the immune system. (ECF No. 162, at 2.) However, Mr. Calvert has not presented any information suggesting his sickle cell disease has rendered him immunocompromised. While Mr. Calvert and all other inmates face a potential increased risk of transmission, the material Mr. Calvert relies on does not establish that he is in a category of individuals at an increased risk of suffering severe illness.

### C. The Extent to which the Proposed Release Plan is Tailored to Mitigate or Exacerbate COVID-19 Risks to the Defendant

Defendants who seek release based on COVID-19 must propose a release plan tailored to mitigate overall risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. If Mr. Calvert is released, he proposes living with his mother in Manhattan, Kansas, or his sister in Junction City, Kansas. The government argues that it is speculative whether the release plan would mitigate his

---

[1] Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 10, 2020).

9

risk of contracting COVID-19, with no known cases in the facility housing Mr. Calvert and many cases within the state. The court finds this factor neither weighs in favor of nor against release.

### D. The Likelihood that the Defendant's Proposed Release Would Increase COVID-19 Risks to Others

In considering a defendant's proposed release plan, the court must also be mindful of whether the plan would put others at an increased risk of contracting COVID-19. This factor is closely related to the first—the reasons underlying the detention order—in that a "defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. While Mr. Calvert has proposed a release plan that minimizes his contact with others at LDC, the likelihood that he would violate conditions of release poses risks to others who would be required to come into contact with Mr. Calvert and risks to other inmates if he were to be taken back to LDC. Therefore, this factor does not favor release.

\* \* \* \* \*

In sum, the court is unpersuaded that Mr. Calvert has demonstrated a "compelling reason" that his release is "necessary," as required by § 3142(i).

## IV. EIGHTH AMENDMENT

Finally, Mr. Calvert briefly argues that COVID-19 presents an imminent risk to his health and safety and that his detention at LDC represents an unsafe medical condition. The court does not find that the Eight Amendment supports temporary release given the underlying reasons for detention; the fact that there no known cases of COVID-19 at LDC; and there is no evidence that the facility would be unable to render treatment to Mr. Calvert if he were to become infected.

10

Therefore, the court does not find that the Eighth Amendment supports Mr. Calvert's request for release. *See United States v. McDonald*, No. 219CR00312KJDVCF, 2020 WL 1659937, at *3 (D. Nev. Apr. 3, 2020) (rejecting an argument for temporary release based on the Eighth Amendment because defendant was at risk of contracting COVID-19 regardless of whether he was in custody, and these facts did not rise to the standard of deliberate indifference to the defendant's medical needs).

## V.     CONCLUSION

Mr. Calvert has not shown that COVID-19 or new information about the strength of the government's case have a material bearing on the issue of detention to warrant reopening his detention hearing under § 3142(f). Considering the above factors, on balance, Mr. Calvert also has not shown compelling reasons justify his release under § 3142(i). The court makes this finding in large part based on the reasons underlying Mr. Calvert's detention and absence of a reliable record showing that his medical condition puts him in a high-risk category. Mr. Calvert also has not shown a violation of his Eighth Amendment rights that would support temporary release. For these reasons, his motion is denied.

**IT IS THEREFORE ORDERED** that Defendant Michael Calvert's Motion for Temporary Release from Custody and in the Alternative for Temporary Release (ECF No. 142) is denied.

**IT IS SO ORDERED.**

Dated April 13, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
